Ready, special J.
delivered the opinion of the court.
In 1814 or 1815, Elizabeth Duffill, the aunt of William Porter the complainant, loaned him her negro boy Henry, which he continued to hold under said loan until about 1825, when being in bad health, and the boy having contracted bad habits and become refractory, he was unable to govern him. Hugh B. Porter, the defendant, who is the son of complainant, in order that he might manage the boy, then took him into his possession, complainant consenting, and let complainant have the use of one of his in lieu of Henry. Complainant continued in possession of defendant’s boy and defendant in possession of Henry until 1829, when defendant sold Henry without complainant’s consent, and he was taken to Louisiana. In 1828 Mrs. Duffill made her will in which is the following bequest, to wit: “I give and bequeath to Hugh B. Porter, son of Wm. Porter, a negro boy named Henry, which negro is to be by him loaned to his father, Wm. Porter, during his life, as the terms on which he is devised to him.” The negro thus willed is the same that defendant had gotten into his possession in manner aforesaid.
Mrs. Duffill died in 1832 at the advanced age of ninety- *587 three years, and at February term, 1833, of the county court of Giles county, her said will was duly proved and recorded. In 1829, after-the defendant had sold the boy Henry, he took his own boy out of complainant’s possession, and has ever since refused to furnish him with another, or make him compensation for the services of Henry. The bill sets up the right of complainant to the services of the boy Henry, under Mrs. Duffill’s will, and seeks for an account against the defendant for their value; and inasmuch as the boy is placed beyond the jurisdiction of the court, the bill prays the court to decree that defendant' shall place another boy of equal value with Henry, in possession of complainant during his lifetime, or otherwise to decree that he shall pay to complainant annually, during his natural life, a sum equal to the value of the hire of Henry.
Defendant resists the claim set up by the bill, on the ground that the negro Henry was his, that he took possession of him in 1825 as his own property, having understood that Mrs. Duffill had previously willed Henry to him without any condition, and insists on the length of his possession before the death of Mrs. Duffill, holding and claiming him adversely, as his own, as giving him a good title under the statute of limitations. He also insists upon the lapse of more than three years since the death of Mrs. Duffill, and before the filing of the bill, during which time the boy has been adversely holden, and relies upon the statute of limitations against all the relief sought by the complainant.
There is no proof in the record to sustain the position assumed by defendant in his answer, that he took Henry into possession as his own property, and claiming him as his. The statement in the answer that defendant had been informed in 1822 that Mrs. Duffill had made her will, and bequeathed him the boy Henry, without condition, when, in point of fact, the will was not made until 1828, can only be regarded as a pretext for the assumption of a right which he probably did not think of asserting until sometime after he had got the boy into his possession. Even if the will had been executed before he got possession, that circumstance, in the absence of proof that he *588 claimed and took him as his own could have no effect, as no right was conferred by the will until after the death of the testatrix. But there is proof, showing to a reasonable certainty, that defendant took possession of the boy, regarding him as the property of Mrs. Duffill, the use of which she had bestowed on complainant; that he was prompted to take him into his possession for the benefit of his father, who was unable to control him; and that recognizing his right to the services of the boy, he placed another in lieu of him, which he permitted to remain as long as he kept possession of Henry. Therefore, when his possession commenced it must be regarded-, as of the same character with his father’s. •
When his possession commenced, being in obedience to the title of Mrs. Duffill, the intendment of the law is that its character continued the same. If it did so continue, at what period did it, in fact, change? and if he afterwards assumed to hold for himself, and in hostility to the rights of his father and Mrs. Duffill, were they notified of it? That he did commence claiming the boy as his own at some period before he sold him is rendered highly probable, indeed, it may be said, certain, by the testimony of Henry Smith, who says defendant offered to sell him the boy several times, for one or two years before he was sent off — and that he claimed him as his boy. The witness does not fix the period at which this claim commenced, nor does it appear from the testimony of any witness that complainant, or Mrs.Duffill, or either of them, were notified, or knew ho had set up such a claim. To hold that a man, who had obtained possession of the property of another, acknowledging his right, and in obedience to it, may defeat that right by operation of the statute of limitations, because he may have told a dozen other persons, he held and claimed it as his own, without bringing home to the real owner notice of such claim, would be to establish a principle of most dangerous tendency; one which would inflict a deadly wound on all our social relations, as connected with the rights of property.
The first act on the part of the defendant which we regard as disavowing the rights of the true owner of the property, was the sale of the boy. In that there was something tangible; the *589 posséssion was changed, an assertion of ownership accompanied the change, and the property shortly disappeared from the country. These are facts which could not fail to elicit enquiry and to apprize the true owner that her rights were'in jeopardy. From this period, which was in 1829, we hold that the statute of limitations would commence running, if there existed no legal hindrance to its operation. But it is satisfactorily proved, that in 1828, and from thence until her death, from her extreme old age and mental imbecility, being then near ninety years old, Elizabeth Duffill was incapable of attending to any business, or of taking care of herself, and had to break up keeping house and remove to the house of a relative to be taken care of by her friends.
We cannot doubt, therefore, that she came within the saving of the statute in favor of persons non compos mentis.
Indeed we do not doubt that she was incompetent to make a will in 1828, and that upon an issue of devisavit vd non, the will would have been set aside; but we cannot enquire into that here. Her heirs and next of kin thought proper- to acquiesce. It has been duly proved and recorded and we are now to treat it as a valid instrument.
We are of opinion then, that the statute of limitations did not commence running against Mrs. Duifill up to the period of her death, and inasmuch as defendant commenced holding Henry in obedience to her title, in contemplation of law, he continued to hold under"her until her death.
The bequest under which complainant claims the services of Henry is a good one, and confers upon him a right to them during his lifetime, with remainder to defendant, and at the death of the testatrix, defendant being regarded as in possession of Henry for her, he necessarily commenced holding under the will, which confers on him the character of trustee, to hold the boy Henry in trust for complainant during life. The trust is express, against which the statute of limitations will not run. Angel on Limitations, 136; Cocke & Jack vs. McGinnis, adm'r. &c. Mar. & Yerg. 136; Costers vs. Murray, 5 John. Ch. 524. It follows, therefore, that complainant’s rights are not barred by the lapse of time from the death of the testatrix to the filing com *590 plainant’s bill — and that he is entitled to an account of the val- ' ue of Henry’s hire from the death of Mrs. Huffillup to the present time.
The decree of the chancellor will be reformed in accordance with this opinion, and the cause must be retained in court in order that the defendant may be required to account annually, during the lifetime of complainant, for the value of the hire.